FILED
LOGGED
ENTERED
RECEIVED

APR 20 2015

BY
CLERK U S DISTRICT COURT
DISTRICT OF MARYLAND
AT BALTIMORE

DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Kenneth A. Greene | * | |
| 3423 St. Ambrose Avenue | * | |
| Baltimore, MD 21215 | * | |
|     Plaintiff | * | |
| v. | * | JURY TRIAL DEMANDED |
| | * | |
| | * | Civil Action No. JFM 15-1117 |
| Protective Life Insurance Company | * | |
| P O Box 12687 | * | |
| Birmingham, AL 35202-6687 | * | |
| | * | |
| Mark T. Bertolini | * | |
| AETNA Life Insurance and Annuity Company | | |
| 151 Farmington Avenue | * | |
| Hartford, CT 06156 | * | |
| | * | |
| ING Life Insurance and Annuity Company | | |
| 1475 Dunwoody Drive | * | |
| West Chester, PA 19380 | * | |
| | * | |
| Kellie Johnson, Insurance Investigator | * | |
| Mary M. Kwei, Chief Insurance Investigator | | |
| Maryland Insurance Administration | * | |
| 200 St. Paul Place, Suite 2700 | * | |
| Baltimore, MD 21202 | * | |
| (in their individual and official capacities) | | |
|     Defendants | * | |

**********************************

# COMPLAINT

## INTRODUCTION

1.     This is a complaint which challenges the decision of Protective Life Insurance

Company to cancel Plaintiff's life insurance policy on account of a cash policy loan advance

which Plaintiff asserts was discharged in bankruptcy, and for which Protective Life has continued

to demand payment even after Plaintiff received his Chapter 7 discharge.

2.      The Complaint also challenges the decision of Mary M. Kwei to cease processing of a Complaint Plaintiff filed with the Maryland Insurance Administration.


PARTIES

3.      Kenneth A. Greene is a legally blind, Negro American Indian Seventh Day Adventist who is a citizen of these United States of America, and a former federal employee with the Social Security Administration who, in 1980 purchased, pursuant to the Federal Employees Group Life Insurance program, a life insurance contract from Aetna Life Insurance Company.

4.      Mary M. Kwei, an employee of the Office of the Attorney General,Maryland Insurance Administration is employed as the Chief Insurance Investigator.  Mary M. Kwei has failed to live up to the standards expected by professional "suppliers of information" for the guidance of others in their business transactions.  See, e.g., 100 Investment Limited Partnership et al. v. Columbia Town Center Title Company, et al., No. 19, September Term 2012, filed January 29, 2013.  Kellie Johnson is an Insurance Investigator.

5.      Protective Life Insurance Company is a "debt collector" which provided collection services for Aetna Life Insurance Company, and to ING Life and Annuity Company, a successors in interest.  Aetna and ING are joined as indispensable parties who are jointly and severally liable to the Plaintiff.

6.      Aetna is one of the largest providers of health care, dental, pharmacy, group life, disability, and long-term care insurance and employee benefits in the United States. Aetna Life Insurance Company began selling life insurance in 1850. Since that time, Aetna expanded into health care specialties; however, continues to provide group life insurance, group long term care insurance and group disability insurance. Aetna customers include employer groups, individuals,

college students, part-time and hourly workers, health plans and government-sponsored plans.
Membership includes 13.6 million group insurance members.

JURISDICTIONAL STATEMENT

7.     This court has jurisdiction over this matter which raises federal questions pursuant
to 28 U.S.C. §§1331, 1332, 1334, 1343, 1361 and 2201, as well as pursuant to 42 U.S.C. §§
1981- 1986, 1988, 2000bb and 2000a(a) and 2000e5.  This court has pendent jurisdiction over
state consumer protection law claims.

STATEMENT OF FACTS

8.     In June 1980, Plaintiff purchased an insurance contract, Policy No. N3770609,
from Aetna Life Insurance Company; the interest rate to be applied to policy loan advances was
6%.

9.     In October 1983, Plaintiff contacted his insurance agent, Sally Beaver-Ward, and
requested to exchange N3770609 for a new policy.

10.     Plaintiff was issued policy numbered W4249149 which became effective
November 1, 1983; the interest rate to be applied to policy loan advances was stated on the policy
as "8% per year or at any lower rate established by Aetna during any period during which the
loan was outstanding." Exhibit 1.

11.     On September 13, 1985, Plaintiff was placed on "enforced leave" by the Social
Security Administration due to his visual disability.

12.     Soon thereafter, Plaintiff invoked the disability waiver of premium pursuant to the
terms of his insurance contract.

13.    Under the terms of the insurance contract, the disability waiver of premium option could be applied for up to thirty two years, after which no further premiums were due on the fully "paid up policy."

14.    On August 28, 1986, Plaintiff was placed on "involuntary disability retirement" due to his visual disabilities.

15.    Since this time, Plaintiff's premiums have been paid pursuant to the terms of the disability waiver of premium clause due to Plaintiff's "permanent disability."

16.    About 1994 (exact date unknown), Plaintiff took out a loan advance on his policy.

17.    When Plaintiff applied for the policy loan advance, Plaintiff was told that the applicable interest rate was 6%.

18.    In 1998, Plaintiff filed a Chapter 7 bankruptcy which was docketed by the U.S. Bankruptcy Court for the Eastern District of Pennsylvania as Bankruptcy Case No. 98-35663.

19.    Plaintiff listed Aetna's policy loan advance on his schedules.

20.    Federal bankruptcy law starts with the proposition that all debts are dischargeable and then lists the exceptions to discharge.

21.    Aetna Life Insurance Company was advised of the bankruptcy filing by the bankruptcy court.

22.    Plaintiff was granted a Chapter 7 discharge on July 3, 1999. Exhibit 2.

23.    When a creditor TIMELY objects to the discharge of debt, it must be raised in an adversarial proceeding. See, e.g., Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir 1995); Department of the Air Force v. Carolina Parachute Company, 907 F.2d 1469, 1473-74 (4th Cir. 1990)(noting that federal courts have consistently applied res judicata principles to bar a party from asserting a legal position after failing, without reason, to object to the relevant confirmation

or discharge order); U.S. v. Mondanlo, 493 B.R. 469 n.3 (2013); Rich v. Maryland National

Bank, 42 B.R. 350, 353 (D. Md. 1984).

24.     Aetna did not file an objection or adversarial proceeding challenging the

discharge.

25.     Res judicata applies to the discharge of the policy loan advance.

26.     When the debtor received his Chapter 7 discharge, the policy loan advance of

Aetna Life was also discharged pursuant to 11 U.S.C. § 727.

27.     The list of exceptions to a Chapter 7 discharge are found in 11 U.S.C. § 523.

28.     The scope of the discharge varies in each chapter of bankruptcy:  in Chapter 7,

debts not discharged include:

> debts incurred by fraud,
>
> intentionally harmful actions,
>
> theft of several kinds,
>
> priority taxes, unfiled taxes,
>
> family support and debts to a former spouse,
>
> student loans, and
>
> criminal fines and restitution.

29.     The policy loan advance was not excepted from discharge by any provision of

11 U.S.C. § 523 (b)(1998).

30.     There are also non-bankruptcy code exceptions to discharge found in 10 U.S.C.

§16135,  20 USC §6674(f)(3),  18 USC §3613, 25 USC §1616a, 37 USC 303a(e)(4),  38 USC

§7634, and  42 U.S.C.§ 292f(g)'none of the additional exceptions relate to the life insurance

polcy loan advance.

31.     When Kenneth A. Greene received his Chapter 7 discharge, he received a

discharge of all debts claimed by Aetna, if any, as well as a discharge of all debts which could

have been claimed by Aetna Life Insurance Company. See, e.g., Univeral Suppliers, Inc. v.

Regional Building Systems, Inc., 254 F.3d 528, 533 (4th Cir. 2001);  First Union Commercial

Corp v. Nelson, Mullin, Riley and Scarborough (In re Vorats), 81 F.3d 110, 1215 (1996);  In re

Luria, 175 B.R. 604, 608 (Bankr. D. Md. 1994).

32.     After Plaintiff received his discharge, plaintiff received several subsequent

communications from Aetna asserting that the policy loan had not been discharged, and that

Plaintiff owed the accruing interest and principal of the loan advance.

33.     In July 1999, Aetna representatives telephoned Plaintiff to inform him that

Aetna's legal department determined that Plaintiff's "policy loan did not fall under the

bankruptcy ruling and you are still obligated for the loan balance and all interest that has accrued

since that time;" Plaintiff disagrees.+

34.     By letter dated July 8, 1999, Plaintiff wrote to Debbie Terrell, stating, in pertinent

part:

> "Unless a party in interest objects, the property claimed as exempt on ;the debtor's
> schedules] is exempt." 11 U.S.C. § 52291); Taylor v. Freeland & Kronz, 503 U.S. 638,
> 646 (1992).  Since neither AETNA nor the trustee objected to the debtor's claimed
> exemptions within 30 days of the first meeting of creditors, the insurance policy became
> exempt.  "Unless the case is dismissed, property exempted underthis section is not liable
> during or after the case for any debt of the debtor that arose, or that is determined under
> section 502 of this title as if such debt had arisen, before the commencement of the case.
> 11 U.S.C. 522(c)."  In re Gamble, 168 F.3d 442, 444 (11th Cir. 1999.  Once property is
> removed from the estate by exemption without objection, the debtor may use it as his
> own.  Hall v. Finance One of Georgia, 752 F.2d 582, 584 (11th Cir. 1985).  Thus, my
> insurance policy is my exclusive property and is under my exclusive control."

Exhibit 4.

35.     Beginning 2003, Protective Life began to demand payment of an alleged

outstanding policy loan balance.

36.    Protective Life also began to require Plaintiff to submit proof of his address each

year under threat of cancellation of the policy; the insurance contract does not require annual

verification of anything once the insured is determined to be "permanently disabled."

37.    When Plaintiff did not reply to the address inquiry, Progressive would cancel the

disability waiver of premium, and take monies from the loan value.

38.    Plaintiff was first determined to be permanently disabled in 1985, and no

verification of disability is required under the terms of the insurance contract for persons who are

deemed "permanently disabled.".

39.    A caveat of the life insurance industry is that "for so long as the premium is paid,

the policy can not be canceled."

40.    On or about October 26, 2006, Plaintiff took another loan advance in the amount

of 597.97.

41.    Soon thereafter, Progressive Life began to demand payment of more than $6000.

42.    By letter dated September 20, 2010, Tim Jordan wrote to plaintiff asking Plaintiff

to complete a "simplified form" by stating-

        We "have placed you on permanent disability ...   ."  Exhibit 5 .

43.    When the insured is on permanent disability, there is no cause to request any

information respecting location or anything else.

44.    By letter dated February 21, 2011, Protective Life wrote to the Plaintiff, stating--

WE HAVE NOT RECEIVED YOUR PAYMENT FOR THE 02/01/2011 PREMIUM.
TO MAKE SURE YOU HAVE CONTINUOUS COVERAGE, WE MUST RECEIVE
YOUR PAYMENT BY 03/04/2011. IF WE DO NOT RECEIVE YOUR PAYMENT BY
THEN, YOUR POLICY WILL LAPSE.

Exhibit 6.

45.     By letter dated April 19, 2011, Deborah Whitten notified Plaintiff that a 'payment of $203.65 is required to pay your policy to February 1, 2012 when all premiums due were to be paid under the disability waiver of premium provision. Exhibit 7.

46.     On July 5, 2011 Plaintiff wrote to Tim Jordan asking about the situation with the life insurance policy premiums.

47.     By letter dated July 14, 2011 Protective Life's Tim Jordan wrote to Plaintiff that "We are currently researching your questions and will send a response once we have finished reviewing the file. Exhibit 8.

48.     Plaintiff did not receive any further reply upon completion of Protective Life's research as per Tim Jordan's July 14, 2011 letter.

49.     By letter dated October 24, 2011, Protective Life Insurance Company notified Plaintiff that "[t]he policy has been approved for waiver through November 01, 2012. Exhibit 8.

50.     The policy had been approved for waiver since 1985, and no additional approval has ever been required.


COUNT ONE
Violation of Civil Rights Protected by 42 U..S.C. § 1981
Committed by Mary M. Kwei, Chief Insurance Investigator, Life and Health Unit,
Office of Attorney General, Maryland Insurance Administration


51.     On the basis of race and religion, Mary E. Kwei has deprived Plaintiff of the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."

52.    42 U.S.C. § 1981 provides as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

53.    Plaintiff incorporates by reference all paragraphs above as if they were fully

inscribed in this count.

54.    Mary M. Kwei is a White female who is a jew of Eastern European Jewish

ancestry.

55.    Plaintiff alleges that Mary M. Kwei is also a homosexual, more specifically, a

"lesbian. "

56.    In June 2014, Plaintiff filed a complaint against Protective Life with the Maryland

Insurance Administration (hereinafter "MIA"); the matter was asigned to Kellie Johnson.

57.    By letter dated September 12, 2014 Barry Longacre of the Pennsylvania Insurance

Department thanked Plaintiff for contacting the Pennsylvania Insurance Department re concerns

about Protective Life Insurance Company.  Exhibit 9.

58.    Plaintiff has never contacted the Pennsylvania Insurance Department.

59.    By letter dated October 17, 2014, megan Wages, a Customer Service

Representative with Protective Life, notified Plaintiff that "your policy will lapse if the loan is

not reduced to an amount less than the Cash Value. <u>Exhibit 10</u>.

60.     By letter dated November 16, 2014, Plaintiff advised Megan Wages to check Protective's correct its records "to reflect that the loan was discharged in bankruptcy." <u>Exhibit 11</u>.

61.     By letter dated November 18, 2014, Heather Parker of Protective Life's Claims Department notified Plaintiff that "We are currently reviewing your letters and our file.  Once our review has been completed, we will respond accordingly.  Please allow 20 business days to complete the process. <u>Exhibit 12</u>.

62.     On November 18, 2014, Plaintiff wrote to Kellie Johnson and requested "a determination from the Maryland Insurance Administration which will include all appeal rights available to me under Maryland law.  Exhibit 13.

63.     By letter dated November 24, 2014, Mary M. Kwei, Chief Insurance Investigator, advised plaintiff that we "are unable to assist your further with this policy. <u>Exhibit 14</u>.

64.     While Plaintiff telephoned Mary M Kwei a few weeks later, Ms. Kwei informed Plaintiff that she had discussed the issue with the Commissioner, and would advise me when and if she received a reply.

65.     The MIA typically utilizes a system whereby any person aggrieved by a final decision of the Maryland Insurance Administration may file a request for an administrative review with the Office of Hearings and Appeals.

66.     However, the MIA took action to deny Plaintiff an administrative review, and further denied Plaintiff a right to a hearing before the Office of Hearings and appeals.

67.     By failing to ensure that Kellie Johnson completed its administrative review, and by failing and refusing to afford Plaintiff opportunity for administrative review, Mary M. Kwei

violated Plaintiff's rights guaranteed under 42 U.S.C. § 1981.

68.     By failing to complete its administrative review, and failing and refusing to afford

Plaintiff opportunity for administrative review, Mary M. Kwei violated Plaintiff's rights, under

color of state law, guaranteed under 42 U.S.C. § 1983.

WHEREFORE, Plaintiff prays that this Honorable Court

a.      Assume jurisdiction over this cause of action;

b.      Enter summary judgment in favor of Plaintiff and against Mary M. Kwei;

c.      Award Plaintiff damages, including exemplary and special damages in an amount

        not less than $250,000;

d.      Grant such other relief as is just and fair.


### COUNT TWO
Claims Against Mary M. Kwei for
violation of Civil Rights under 42 U.S.C. § 1982


69.     Plaintiff incorporates all statements above as if they were fully set forth in this

count.

70.     All citizens of the United States shall have the same right, in every State and

Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey

real and personal property.

42 U.S.C. § 1982.

71.     Mary M. Kwei violated rights of Plaintiff in violation of 42 US.C. § 1982.

72.     By failing to afford Plaintiff a full and complete administrative review pursuant to

existing procedures used by the MIA, and failing and refusing to afford Plaintiff opportunity for

administrative review, Mary M. Kwei violated Plaintiff's rights, under color of state law, guaranteed under 42 U.S.C. § 1982.

WHEREFORE, Plaintiff prays that this Honorable Court

a.   Assume jurisdiction over this cause of action;

b.   Enter summary judgment in favor of Plaintiff and against Mary M. Kwei;

c.   Declare that Mary M. Kwei denied Plaintiff the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property;

d.   Award Plaintiff damages, including exemplary and special damages in an amount not less than $250,000;

e.   Grant such other relief as is just and fair.

## COUNT THREE
Claims Against Mary M. Kwei for
violation of civil Rights under 42 U.S.C. § 1983

73.   Plaintiff incorporates all statements above as if they were fully set forth in this count.

74.   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's

judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

75.    Mary M. Kwei violated rights of Plaintiff in violation of 42 US.C. § 1983.

76.    By failing to afford Plaintiff a full and complete administrative review pursuant to existing procedures used by the MIA, and failing and refusing to afford Plaintiff opportunity for administrative review, Mary M. Kwei " subjected plaintiff, or caused plaintiff to be subjected, to the deprivation of rights, privileges, or immunities secured by the Constitution and laws, and is liable to the Plaintiff so injured in an action at law, suit in equity, or other proper proceeding for redress", for the violation of rights guaranteed under 42 U.S.C. § 1983.

WHEREFORE, Plaintiff prays that this Honorable Court

a.    Assume jurisdiction over this cause of action;

b.    Enter summary judgment in favor of Plaintiff and against Mary M. Kwei;

c.    Declare that Mary M. Kwei caused Plaintiff to be subjected to the deprivation of rights, privileges, or immunities secured by the Constitution and laws;

d.    Award Plaintiff damages, including exemplary and special damages in an amount not less than $250,000;

e.    Grant such other relief as is just and fair.

## COUNT FOUR
### Conspiracy to violate civil Rights

77.     42 U.S.C. § 1985 makes one or more persons who violate § 1985 liable to the Plaintiff.

78.     Mary M . Kwei conspired with one or more employees of Protective Life, and with Barry Longacre of the Pennsylvania Insurance Department to discriminate against Plaintiff on the basis of his race and religion, in violation of 42 U.S.C. § 1985.

79.     On November 16, 2014, Plaintiff wrote to Barry Longacre of the Pennsylvania Insurance Department to request an update on his activities since Mary M. Kwei caused Plaintiff's MIA complaint against Protective Life to be transferred to the Pa. Insurance Dept.

80.     Barry Longacre has never responded to Plaintiff's letter.

81.     In transferring Plaintiff's MIA complaint to the Pennsylvania Insurance Department without the prior approval of the Plaintiff, Mary M. Kwei conspired to go in disguise on the highway or on the premises of another, for the purpose of depriving Plaintiff, either directly or indirectly, of the equal protection of the laws.

82.     If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having

and exercising any right or privilege of a citizen of the United States, the party so injured or

deprived may have an action for the recovery of damages occasioned by such injury or

deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

83.     By letter dated November 16, 2014, Plaintiff wrote to Shelli Isiminger,

Compliance Specialist asserting the Protective Life was engaging in fraud.

84.     By letter dated November 18, 2014, Plaintiff wrote to Kelli Johnson to complain

about the transfer of his complaint to the Pennsylvania Insurance Department.  In his letter,

Plaintiff stated--

> Megan Wages, the Protetive Life employee who sent me the October 17, 2014
> notice that my policy would lapse effective November 17, 2014 unless a payment in the
> amount of $261.75 was received by that date telephoned me today to inform me that such
> action can not and would not be taken; further review is needed by Protective Life to
> determine if the debt was indeed discharged.  Since Protective Life alreay admits to
> regarding me as "PERMANENTLY DISABLED" (1) there is no rational basis nor right
> to ask for evidence of disability of location information using its  "simplified form," (2)
> repeatedly threatening me with lapse/cancellation of the policy was patently unlawful and
> (3) I am entitled to make use of the full cash value set forth in Table A.
> Wherefore, as jurisdiction over this matter is vested in MIA, I await a full copy of
> the original insurance policy to be added to the file record AND a determination from the
> Maryland Insurance Administration which will include all appeal rights available to me
> under the Maryland law.

Exhibit  .

85.     Mary M. Kwei responded with her letter dated November 24, 2014 wherein she

told Plaintiff that the MIA "would be unable to assist you any further."

86.     Not coincidentally, on November 24, 2014 Debby Thomson of Protective Life

also wrote to Plaintiff on November 24, 2014.

87.     On November 26, 2014 Plaintiff wrote to Mary M. Kwei to again request that the

MIA complete its processing of Plaintiff's complaint, issue a decision and advise Plaintiff of any

appeal rights.  Exhibit  .

88.     On December 11, 2014, Plaintiff telephoned M.. Kwei and asked when He might receie a final decision.

89.     Mary M. Kwei said that she had given the letter to the Commissioner, and that "the Commissioner" had yet to give her any feedback.

90.     By letter dated December 15, 2014, Protective Life advised Plaintiff that his insurance policy was  cancelled "with no further value or benefit due to the outstanding loan balance exceeding the cash value as defined in the Loan Provision of your policy."

91.     By continuing to take unlawful acts to recover the discharged debt once owed to Aetna Life Insurance Company,  ING Life and Protective Life have violated the anti-discharge provision of 11 U.S.C. § 524, and have effectively denied Plaintiff his § 525 "fresh start." See, e.g., FCC v. Nextwave Personal Communications, Inc., 537 U.S. 293, 123 S.Ct. 832, 154 L.Ed.2d 863 (2013).

WHEREFORE, Plaintiff prays that this Honorable Court;

a.      Assume jurisdiction over this cause of action;

b.      Enter a grant of summary judgment against Mary M. Kwei, in her individual and official capacities, and in favor of Plaintiff;

c.      Award Plaintiff damages, including liquidated damages, exemplary damages and special damages totaling $1,000,000.00; and

d.      Grant such other relief as is just and fair.

COUNT FIVE

Violation of Civil Rights Protected by 42 § 2000bb
Committed by Mary M. Kwei, Chief Insurance Investigator, Life and Health Unit,
Office of Attorney General, Maryland Insurance Administration

92.    Plaintiff incorporates by reference all paragraphs above as if they were fully

inscribed in this count.

93.    Debbie Terrell is a person with Eastern European Jewish ancestry.

94.    Deborah Whitten is a person with Eastern European Jewish ancestry.

95.    Debi Henry is a person with Eastern European Jewish ancestry.

96.    Megan Wages is a person with Eastern European Jewish ancestry.

97.    Heather Parker is a person with Eastern European Jewish ancestry.

98.    Shelli Isiminger is a person with Eastern European Jewish ancestry.

99.    Mary M. Kwei is a person with Eastern European Jewish ancestry.

100.   Shelli Isiminger is a person with Eastern European Jewish ancestry.

101.   Ronny Vinson is a person with Eastern European Jewish ancestry.

102.   Under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. 2000bb (1993),

a person who alleges that his or her rights of free exercise of religion have been violated may

assert that violation as a claim or defense in a judicial proceeding and obtain appropriate

relief--including injunctive relief--against a governmental entity.   See  42 U.S.C. 2000bb-1(c);

Campos v. Coughlin, 854 F.Supp. 194 (S.D.N.Y. 1994); Western Presbyterian Church v. Board

of Zoning Adjustment of District of Columbia, 849 F.Supp. 77 (D.D.C. 1994).

103.   Mary M. Kwei has substantially burdened Plaintiff's exercise of religion without

any compelling purpose.

104.   The Maryland Insurance Administration discriminates against non-Jewish persons

on the basis of religion.

105.     Due to his race and religion, Mary M. Kwei has failed and refused to afford
Plaintff a full and complete investigation of the claims made in the complaint filed with the MIA.

106.     On the basis of his race and Seventh Day Adverntist religion, Mary M. Kwei and
the MIA have substantially burdened Plaintiff's exercise of religious freedom with no compelling
purpose.

107.     WHEREFORE, Plaintiff prays that this Honorable Court;

a.      Assume jurisdiction over this cause of action;

b.      Certify as a class "all persons who have filed complaints with the Maryland
        Insurance Administration;"

c.      Enter an order compelling Mary M. Kwei and Kellie Johnson to complete
        processing of Plaintiff's complaint filed with the MIA, and the complaint of any
        other citizen for whom Mary E. Kwei and/or Kellie Johnson failed to reach a final
        decision and offer the opportunity for administrative or judicial review, and
        provide Plaintiff Class members all due process and administrative review to
        which they are entitled to receive under Maryland law;

d.      Enter a grant of summary judgment against Kellie Johnson and Mary M. Kwei, in
        their individual and official capacities, and in favor of Plaintiff;

e.      Award Plaintiff damages, including liquidated damages, exemplary damages and
        special damages totaling $1,000,000.00; and

f.      Grant such other relief as is just and fair.

## COUNT SEVEN
Claims against Aetna Life, ING Life and Protective Life Insurance Companies
Pursuant to Maryland Consumer Protection Law, § 13-301

108.    Plaintiff incorporates by reference all paragraphs above as if they were fully

inscribed in this count.

109.    On or about December 15, 2014

WHEREFORE, Plaintiff prays that this Honorable Court;

a.    Assume jurisdiction over this cause of action;

b.    Enter a grant of summary judgment against Mary M. Kwei, in her individual and

official capacities, and in favor of Plaintiff;

c.    Award Plaintiff damages, including liquidated damages, exemplary damages and

special damages totaling $1,000,000.00; and

d.    Grant such other relief as is just and fair.


## COUNT EIGHT
Claims against Aetna Life, ING Life and Protective Life Insurance Companies
For Breach of Contract

110.    Plaintiff incorporates by reference all paragraphs above as if they were fully

inscribed in this count.

111.    The life insurance contract has a face value of $18, 430.00.

112.    The life insurance contract has an accidental death benefit of $18,430.

113.    The life insurance contrract has been paid for 30 years by the disability waiver of

premium benefit.

114.    The maximum number of years the disability waiver of premium benefit remains

in effect is 32 years.

115.    Plaintiff's life insurance policy is nearly paid-in-full.

116.    As a result of the cancellation of Plaintiff's life insurance policy, Plaintiff suffered

loss.

WHEREFORE, Plaintiff prays that this court

a.    Assume jurisdiction over this matter;

b.    Enter summary judgment in favor of Plaintiff and against Aetna Life, Progresive

Life and/or ING Life Insurance Company;

c.    Award Plaintiff damages in the amount of $36, 860; and

d.    Grant such other relief as is just and fair.

## COUNT NINE
Claims against Mary M. Kwei, Aetna Life, ING Life and Protective Life Insurance Companies
For Intentional Infliction of Pain and Suffering

117.    Plaintiff incorporates by reference all paragraphs above as if they were fully

inscribed in this count.

118.    As a result of the conduct of Mary M. Kwei, Protective Life, Aetna Life and ING

Life,  Plaintiff, who already suffered from legal blindness, now suffers from significant

cardiovascular disease, and more recently, vasovagal syncope, a sudden but brief loss of

consciousness.

119.    The vasovagal syncope trigger causes a sudden drop in your heart rate and blood

pressure that leads to reduced blood flow to your brain, which results in a brief loss of

consciousness.

120.    Typical triggers for vasovagal episodes include:

Prolonged standing or upright sitting

After or during urination (micturition syncope)
Standing up very quickly (orthostatic hypotension)
During or post-biopsy procedures.
Stress directly related to trauma[7]
Stress
Postural orthostatic tachycardia syndrome (POTS) Multiple chronic episodes are
experienced daily by many patients diagnosed with this syndrome. Episodes are most
commonly manifested upon standing up.
  Any painful or unpleasant stimuli, such as:
    Trauma (such as hitting one's funny bone)
    Watching or experiencing medical procedures (such as venipuncture or injection)
    High pressure on or around the chest area after heavy exercise
  Severe menstrual cramps
  Sensitivity to pain
  Arousal or stimulants, e.g. sex, tickling, or adrenaline
  Sudden onset of extreme emotions
  Lack of sleep
  Dehydration
  Hunger
  Being exposed to high temperatures
  In health care, such as nursing care, digital rectal procedures (e.g., digital disimpaction)
  Random onsets due to nerve malfunctions
  Pressing upon certain places on the throat, sinuses, and eyes (also known as vagal
reflex   stimulation when performed clinically)
  Use of statins and blood pressure medicines or other drugs that affect blood pressure
and/or the immune system;\
  The sight of blood
  Serotonin level / SSRI
  Swallowing
  (Less commonly) Low blood sugar
  Time varying magnetic field (e.g., transcranial magnetic stimulation)


121.   As a result of vasovagal attacks brought on by tension and nervousness over the

course of Plaintiff's sixteen year battle with the above named insurance companies, vasovagal

attacks have been more frequent since filing a complaint with the Maryland Insurance

Administration.

122.   The instant refusal of the insurance companies to cease attempting to collect on a

debt which has been discharged has added to Plaintiff's symptoms and suffering.

123.    Vasovagal syncope occurs when your body overreacts to certain triggers, such as the sight of blood or extreme emotional distress.

124.    Plaintiff has lost consciousness while out in snowstorms.

125.    During the past eight months, Plaintiff has lost consciousness while standing at or walking to fixed route bus stops, even while standing to urinate.

126.    The vasovagal syncope trigger causes a sudden drop in your heart rate and blood pressure that leads to reduced blood flow to your brain, which results in a brief loss of consciousness.

127.    A vagal episode or vasovagal response or vasovagal attack (also called neurocardiogenic syncope) is a malaise mediated by the vagus nerve.  When it leads to syncope or "fainting", it is called a vasovagal syncope, which is the most common type of fainting.

128.    Vasovagal syncope is most commonly discovered in adolescents and in older adults.

129.    Episodes of vasovagal response are typically recurrent, and usually occur when the predisposed person is exposed to a specific trigger.

130.    Vasovagal syncope occurs when your body overreacts to certain triggers, such as the sight of blood or extreme emotional distress.

131.    Plaintiff has lost consciousness during snowstorms.

132.    Vasovagal attacks have become more frequent and more dangerous to Plaintiff's health since learning that Mary Kwei had ceased the processing of his complaint with the Maryland Insurance Administration, and worsened further when Mary Kwei conspired with Protective Life in the cancellation of Plaintiff's life insurance policy.

133.    As a result of the discriminating conduct of Mary M. Kwei, on December 15, 2014

Protective Life cancelled Plaintiff's insurance policy.

134.    Then Plaintiff received a Form 1099R adding income to be reported to the IRS, and increasing the incidence of vasovagal attacks.

135.    As a result of Plaintiff receiving the December 15, 2014 letter announcing its decision to cancel Plaintiff's insurance policy, on December 23, 2014 Plaintiff had a vasovagal attack while having his blood pressure checked during a visit to a Hebrew cardiovascular study doctor's office, and was admitted to the Greater Baltimore Medical Center.

136.    As the person primarily responsible for the care of Plaintiff's 84 year-old mother and her property, the cancellation of Plaintiff's life insurance policy and the loss of the cash loan value has added to Plaintiff's symptoms and suffering.

WHEREFORE, Plaintiff prays this court;

a.    Assume jurisdiction over this Complaint;

b.    Enter judgment in favor of Plaintiff and against Aetna Life, ING Life and Protective Life.

c.    Declare that the conduct of Aetna Life, ING Life and Protective Life caused Plaintiff to endure extreme infliction of emotional distress, and severe pain and suffering;

d.    Award Plaintiff damages, including exemplary damages, special damages, attorney fees and costs totaling $10,000,000.00 against Aetna Life, ING Life and Protective Life ;

e.    Compel the United States Attorney General to take necessary action required pursuant to 42 U.S.C. § 1987 to prosecute Mary M. Kwei; and

f.    Grant such other relief as is just and fair.

COUNT TEN
Claims Against Mary M. Kwei and Kellie Johnson
Pursuant to 42 U.S.C. § 1986

137.    Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued. 42 U.S.C. § 1986.

138.    Kellie Johnson and Mary M. Kwei have been negligent in failing to protect the

interests of the debtor by failing and refusing to render a final administrative decision of the

complaint Plaintiff filed with the MIA.

139.    Plaintiff incorporates by reference all paragraphs above as if they were fully

inscribed in this count.

WHEREFORE, Plaintiff prays this court;

a.    Assume jurisdiction over this Complaint;

b.    Enter judgment in favor of Plaintiff and against Kellie Johnson and Mary M.

Kwei;.

c.    Award Plaintiff damages, including exemplary damages, special damages, attorney

fees and costs totaling $10,000.00 against Kellie Johnson and Mary M. Kwei;

e.    Compel the United States Attorney General to take necessary action required

pursuant to 42 U.S.C. § 1987 to prosecute Kellie Johnson and Mary M. Kwei; and

f.      Grant such other relief as is just and fair.

COUNT ELEVEN
Claims Against Mary M. Kwei
for Discriminatory Treatment in Violation of 11 U.S.C. § 525

140.    11 U.S.C. § 525 prohibits post-discharge discrimination. Department of Air Force

v. Carolina Parachute Corp., 907 F.2d 1469, 1473-74 (4th Cir. 1990) (noting that federal courts

have consistently applied res judicata principles to bar a party from asserting a legal position after

failing, without reason, to object to the relevant proposed plan of reorganization or to appeal the

confirmation order); Rich v. Maryland Nat. Bank, 42 B.R. 350, 353 (D.Md. 1984).

141.    A governmental unit may not deny, revoke, suspend, or refuse to renew a license,

permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with

respect to such a grant against, deny employment to, terminate the employment of, or discriminate

with respect to employment against, a person that is or has been a debtor under this title or a

bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or

debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under

this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the

commencement of the case under this title, or during the case but before the debtor is granted or

denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that

was discharged under the Bankruptcy Act.

11 U.S.C. § 525.

142.    Mary M. Kwei has discriminated against Plaintiff on account of his filing a

bankruptcy petition which resulted in the discharge of a policy loan advance granted by Aetna Life

Insurance Company.

143.    Aetna Life, ING Life, and Protective Life have violated the discharge injunction of 11 U.S.C. § 525.

144.    A Chapter 7 discharge operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

WHEREFORE, Plaintiff prays this court;

a.    Assume jurisdiction over this Complaint;

b.    Enter judgment in favor of Plaintiff and against Aetna Life, ING Life and Protective Life.

c.    Declare that the conduct of Aetna Life, ING Life and Protective Life caused Plaintiff to endure extreme infliction of emotional distress, and severe pain and suffering;

d.    Award Plaintiff damages, including exemplary damages, special damages, attorney fees and costs totaling $10,000,000.00 against Mary M. Kwei, Aetna Life, ING Life and Protective Life ;

e.    Compel the United States Attorney General to take necessary action required pursuant to 42 U.S.C. § 1987 to prosecute Mary M. Kwei; and

f.    Grant such other relief as is just and fair.

## COUNT TWELVE
Claims against Aetna Life, ING Life and Protective Life Insurance Companies
Pursuant to Fair Debt Collection Procedures Act, 15 U.S.C. § 1692

145.    Plaintiff incorporates by reference all paragraphs above as if they were fully inscribed in this count.

146.    The FDCPA is a strict liability law, which means that a consumer need not prove actual damages in order to claim statutory damages of up to $1,000 plus reasonable attorney fees if a debt collector is proven to have violated the FDCPA.  15 U.S.C. § 1692k(a)(2).

147.    The Fair Debt Collection Practices Act (FDCPA), Pub. L. 95-109; 91 Stat. 874, codified as 15 U.S.C. § 1692 –1692p, approved on September 20, 1977 (and as subsequently amended) is a consumer protection amendment, establishing legal protection from abusive debt collection practices, to the Consumer Credit Protection Act, as Title VIII of that Act.

148.    The statute's stated purposes are: to eliminate abusive practices in the collection of consumer debts, to promote fair debt collection, and to provide consumers with an avenue for disputing and obtaining validation of debt information in order to ensure the information's accuracy.

149.    There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by the defendants.

150.    Protective Life is a "debt collector' within the meaning of the FDCPA.

151.    The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. For the purpose of section 1692f (6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.  15 U.S.C. § 1692(a)(6).

152.    Some federal courts have ruled that a collector of debt is not a "creditor" but is rather a "debt collector" under the FDCPA where the collector of debt buys defaulted debt from an

original creditor for the purpose of debt collection.  See, Holmes v. Telecredit Services Corporation, 736 F. Supp. 1289, 1293 (D. Del. 1990); Kimber v. Federal Financial Corp., 668 F. Supp. 1680, 1685 (D. Ala. 1987);  Federal Trade Commission Opinion Letter dated February 22, 1993 (http://www.ftc.gov/os/statutes/fdcpa/letters/arbuckle.htm).

244.    Defendants have misrepresented the nature of debt in violation of 15 U.S.C. § 1692e.

245.    Defendant have sought unjustified amounts, which would include demanding any amounts not permitted under an applicable contract or as provided under applicable bankruptcy law.  15 U.S.C. § 1692f(1); Hodges v. Sasit Corp., 915 A.2d 1 (NJ 2007).

247.    Defendants have generally continued to demand payment via communication with consumer within 30 days after a request for validation had been made, in violation of 15 U.S.C. § 1692g(b).

249.    Defendants have a "consumer claim" that:

(1) is for money owed or said to be owed by a resident of the State; and

(2) arises from a transaction in which, for a family, household, or personal purpose, the resident sought or got credit, money, personal property, real property, or services.  Maryland Fair Debt Collection Practices Act, §7-101.

249.    A violation of the Maryland Debt Collection Practices Act is a violation of the FDCPA.

153.    A violation of the Maryland Consumer Debt Collection Act is a violation of the FDCPA.

WHEREFORE, Plaintiff prays that this Honorable Court;

a.      Assume jurisdiction over this cause of action;

b.    Enter judgment in favor of Plaintiff and against the named defendants;

c.    Enter a grant of summary judgment against Aetna Life, ING Life and Protective

Life Insurance Companies and in favor of Plaintiff;

d.    Award plaintiff and class members $1,000 per violation of 15 U.S.C. §1692;

e.    Award Plaintiff damages, including liquidated damages, exemplary damages and

special damages totaling $1,000,000.00; and

f.    Grant such other relief as is just and fair.


Respectfully submitted,


*Kenneth A. Greene*

Kenneth Allen Greene
3425 St. Ambrose Avenue
Baltimore, MD 21215
Kenneth.Greene@jhu.edu
saacdc@juno.com
(410) 367-8812
                              Plaintiff

"Pragmatic men of power have had no time or inclination to deal with ... social morality."
— K. B. Clark
**********************************************************
VERIFICATION
        Each statement made in the foregoing Complaint is true and correct, has been made to the
best of Plaintiff's knowledge, information and belief, and is made subject to federal and state
statutes relating to unsworn falsification to authorities, including 28 U.S. § 1746.


*Kenneth A. Greene*

Kenneth A. Greene